United States District Court
Southern District of Texas
**ENTERED**
May 19, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEBORAH B. DEAN, on behalf          §
of herself and all others          §
similarly situated,                §
                                    §
                Plaintiff,          §
                                    §          CIVIL ACTION NO. H-21-0242
v.                                  §
                                    §
BIGGS & GREENSLADE, P.C. and        §
ATLAS CREDIT CO., INC.,             §
                                    §
                Defendants.         §

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Deborah B. Dean ("Plaintiff") asserts individual and collective claims against Biggs & Greenslade, P.C. ("B&G") and Atlas Credit Co., Inc. ("Atlas") (collectively, "Defendants") for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, <u>et seq.</u> ("FDCPA") and the Texas Debt Collection Act, Tex. Fin. Code § 392, <u>et seq.</u> ("TDCA").[1]  Pending before the court is Defendants' Joint Motion to Compel Arbitration ("Defendants' Motion to Compel") (Docket Entry No. 11).  For the reasons explained below, Defendants' Motion to Compel will be granted.

---

[1]Class Action Complaint ("Complaint"), Docket Entry No. 1, p. 1 ¶ 1.  All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

## I.  Factual and Procedural Background

Plaintiff is the borrower under a Consumer Credit Disclosure — Promissory Note (the "Note") dated February 6, 2020, and made in favor of Atlas.[2]  The Note states in part:

> Any dispute or claim resulting from or relating to this contract will be settled by arbitration directed by the American Arbitration Association under its Commercial Arbitration Rules.  By agreeing to this arbitration provision, you waive your right to a jury trial.

Id.

Atlas engaged B&G to collect on the alleged debt.[3]  B&G sent Plaintiff a collection letter dated August 26, 2020.[4]  The letter stated that "[B&G] has been retained by Atlas Credit Co., Inc., to collect the outstanding obligation owed by [Plaintiff] in the amount of $1066.50."[5]  The Collection Letter further stated:  "If arrangements for the prompt payment of this debt are not made within thirty (30) days from the date of this letter, we will recommend to our client that suit be filed against you."[6]  The letter instructed Plaintiff to "send a certified check or money

---

[2]Note, Exhibit A-1 to Defendants' Motion to Compel, Docket Entry No. 11-1, p. 5.

[3]Complaint, Docket Entry No. 1, p. 3 ¶ 22; Defendants' Motion to Compel, Docket Entry No. 11, p. 2 ¶ I.

[4]Letter to Deborah Dean from Biggs & Greenslade Law Re: Delinquent Credit Account at Atlas Credit Co., Inc. ("Collection Letter"), Exhibit A to Complaint, Docket Entry No. 1, p. 13.

[5]Id.

[6]Id.

order to your local Atlas Credit branch in the amount of $1066.50 made payable to **Atlas Credit Co., Inc.**[,]" and warned Plaintiff that if she failed to pay the full amount or otherwise contact B&G within thirty days of receipt of the letter, B&G was "authorized to pursue all legal actions necessary to collect this debt."[7]   The letter also stated:

> Unless, within thirty days from receipt of this letter, you dispute the validity of the debt or any portion of it, I will assume the debt to be valid.  If, within that same thirty-day period, you notify me in writing that the debt or any portion of it is disputed, I will obtain a verification of the debt and I will mail you a copy of the verification.[8]

On September 9, 2020, Plaintiff sent to B&G (with a copy to Atlas) a written dispute and request for verification letter via Certified Mail.[9]

On January 25, 2021, Plaintiff filed a putative class action "on behalf of herself and all others similarly situated," alleging that Defendants violated the FDCPA and TDCA.[10]   Plaintiff alleges that the Collection Letter "employ[ed] false, deceptive, or misleading representations," including the representation that Defendants would give Plaintiff thirty days to satisfy the debt

---

[7] Id.

[8] Id.

[9] Letter to Biggs & Greenslade, P.C. from Deborah B. Dean Re: DISPUTED Credit Account at Atlas Credit Co., Inc. ("Dispute Letter"), Exhibit B to Complaint, Docket Entry No. 1, pp. 15-16.

[10] Complaint, Docket Entry No. 1, p. 1.

before commencing legal action, "because Atlas filed suit <u>pro se</u> against Plaintiff on September 1, 2020 — a mere six (6) days after the date of the Collection Letter."[11]   Plaintiff further alleges that the letter illegally demanded that Plaintiff arrange to pay the debt within thirty days from the date of the letter, when the FDCPA at 15 U.S.C. § 1692g(a)(3) affords Plaintiff "thirty days <u>after receipt</u> of the [Collection Letter] to dispute the validity of the debt" (emphasis in original).[12]   Plaintiff also alleges that by threatening to recommend that Atlas take legal action to collect the debt, B&G's letter overshadowed or was inconsistent with her dispute rights under the FDCPA, 15 U.S.C. § 1692g(e).[13]   Plaintiff seeks to hold Atlas "vicariously liable [under the TDCA] for the unlawful collection activities carried out by B&G on its behalf."[14]

On March 12, 2021, Defendants filed their Motion to Compel contending that Plaintiff must arbitrate her individual claims against Defendants.[15]   Plaintiff responded on April 9, 2021,[16] arguing that (1) Defendants have failed to establish the existence

---

[11]<u>Id.</u> at 4 ¶ 27.

[12]<u>Id.</u> at 5 ¶ 30.

[13]<u>Id.</u> ¶ 31.

[14]<u>Id.</u> at 10 ¶ 57.h.

[15]Defendants' Motion to Compel, Docket Entry No. 11, p. 1.

[16]Plaintiff's Response in Opposition to Defendants' Joint Motion to Compel Arbitration ("Plaintiff's Response"), Docket Entry No. 14.

of a binding arbitration agreement between Atlas and Plaintiff;[17] (2) as Plaintiff's case is a putative class action, Defendants are unable to compel arbitration;[18] (3) Atlas waived any right to compel arbitration by suing Plaintiff in state court;[19] and (4) even if the court would compel Plaintiff to arbitrate her claims against Atlas, B&G should not be able to likewise compel arbitration because B&G was not a party to the arbitration contract.[20]  On April 16, 2021, Defendants filed their reply.[21]

## II.  Legal Standard

In enacting the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., Congress "expressed a strong policy favoring arbitration before litigation, and the courts are bound to take notice of this broad policy as well as specific statutory provisions in dealing with arbitration clauses in contracts." J.S. & H. Construction Co. v. Richmond County Hospital Authority, 473 F.2d 212, 214-215 (5th Cir. 1973).  The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy

---

[17]Id. at 2 ¶ II.a.

[18]Id. at 2-3 ¶ II.b.

[19]Id. at 3-5 ¶ II.c.

[20]Id. at 5-6 ¶ II.d.

[21]Reply in Support of Defendants' Joint Motion to Compel Arbitration ("Defendants' Reply"), Docket Entry No. 15.

thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Section 4 of the FAA permits a party to seek an order compelling arbitration if the other party has failed to arbitrate under a written agreement.  9 U.S.C. § 4.  "The party resisting arbitration bears the burden of showing that he is entitled to a jury trial under § 4 of the Arbitration Act." Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1154 (5th Cir. 1992) (internal quotations and citation omitted).

Courts apply a two-step inquiry when ruling on a motion to compel arbitration.  Edwards v. Doordash, Inc., 888 F.3d 738, 743 (5th Cir. 2018) (citing Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 236 (5th Cir. 2013)).  "First, the court asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement."  Id.

"Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court."  Huckaba v. Ref-Chem, L.P., 892 F.3d 686, 687 (5th Cir. 2018) (citing Kubala v. Supreme Production Services, Inc., 830 F.3d 199, 202 (5th Cir. 2016)).  Because arbitration is a matter of contract between the parties, the strong federal policy favoring arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate.  Klein, 710 F.3d at 236.  "[T]he party

moving to compel arbitration must show that the agreement meets all of the requisite contract elements." Huckaba, 892 F.3d at 688. The movant must only prove the existence of an agreement by a preponderance of the evidence. Grant v. Houser, 469 F. App'x 310, 315 (5th Cir. 2012).

District courts within the Fifth Circuit apply a summary-judgment-like standard when considering this question. Johnson v. CMI Group, No. 3:19-CV-2361-N, 2020 WL 8461518, at *4 (N.D. Tex. Dec. 29, 2020), report and recommendation adopted, No. 3:19-CV-2361-N, 2021 WL 424279 (N.D. Tex. Feb. 8, 2021). "[T]he moving party must first 'present evidence sufficient to demonstrate an enforceable agreement to arbitrate.'" Id. (quoting Clutts v. Dillard's, Inc., 484 F. Supp. 2d 1222, 1224 (D. Kan. 2007)). "'This burden does not require the moving party to show initially that the agreement would be enforceable, merely that one existed.'" Id. (quoting Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) (emphasis in original)). "Once this burden has been met by the movant, the burden shifts to the non-movant to raise a genuine dispute of material fact regarding the existence of an agreement to arbitrate." Id. (citing Hancock v. American Telephone and Telegraph Co., Inc., 701 F.3d 1248, 1261 (10th Cir. 2012)). "'Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for

trial.'"  Id. (quoting Tinder v. Pinkerton Security, 305 F.3d 728, 735 (7th Cir. 2002)).

"[I]n step two of the analysis, determining the scope of a valid arbitration agreement . . . we apply the federal policy and resolve ambiguities in favor of arbitration."  Klein, 710 F.3d at 237 (internal citation omitted).  "[W]hen a court interprets [] provisions in an agreement covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'"  Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S. Ct. 1212, 1218 (1995) (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 109 S. Ct. 1248, 1255 (1989)).  "Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself."  Arnold v. Homeaway, Inc., 890 F.3d 546, 551 (5th Cir. 2018) (internal citation omitted).  "However, courts may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of their intent to do so."  Id. at 551-52 (citing First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1925 (1995)).  The Fifth Circuit has held that "stipulating that the A[merican] A[rbitration] A[ssociation] Rules will govern the arbitration of disputes constitutes such 'clear and unmistakable' evidence."  Id. at 552 (citing Petrofac, Inc. V. Dyn-McDermott Petroleum Operations Co., 687 F.3d 671, 674-75 (5th Cir. 2012)).

## III.   Analysis

### A.   The Existence of an Arbitration Agreement

Plaintiff argues that Atlas has not satisfied its burden of showing that a binding arbitration agreement exists between it and Plaintiff.[22]  Atlas argues that it has carried its burden by proving the existence of the Note.[23]

"Under Texas law, a binding contract requires: '(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding.'"  Huckaba, 892 F.3d at 689 (quoting In re Capco Energy, Inc., 669 F.3d 274, 279-80 (5th Cir. 2012)). "'Meeting of the minds' describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." Bandera County v. Hollingsworth, 419 S.W.3d 639, 645 (Tex. App.—San Antonio 2013, no pet.).  "The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind." In re Capco Energy, Inc., 669 F.3d at 280 (quoting Copeland v. Alsobrook, 3 S.W.3d 598, 604 (Tex. App. 1999)).

---

[22]Plaintiff's Response, Docket Entry No. 14, p. 2.

[23]Defendants' Reply, Docket Entry No. 15, p. 2.

Atlas attached a copy of the Note as Exhibit A-1 to Defendants' Motion to Compel.[24] The terms of the Note include an offer to extend credit in exchange for a promise to pay, as well as an agreement to arbitrate "[a]ny dispute or claim resulting from or relating to this contract."[25] Plaintiff does not argue that these essential terms are unclear. The Note appears to bear Plaintiff's signature,[26] and Plaintiff does not dispute that the signature is hers. In her Response Plaintiff lists the elements of a contract that must be proven for the arbitration agreement to be valid and binding,[27] but does not specifically argue that any one of these elements is missing (i.e., she does not argue that there was no offer, no acceptance, or no mutual consent).

Atlas submitted a declaration by its CFO, who declared under penalty of perjury and based on his personal knowledge as custodian of Atlas's business records that **"Exhibit A-1** is an original record or an exact duplicate of the original record . . . ."[28] The Fifth Circuit has held that an uncontroverted affidavit is sufficient to show by a preponderance of the evidence that an arbitration agreement existed. See, e.g., Houser, 469 F. App'x at 315; Banks

---

[24]Note, Exhibit A-1 to Defendants' Motion to Compel, Docket Entry No. 11-1, p. 5.

[25]Id.

[26]Id.

[27]Plaintiff's Response, Docket Entry No. 14, p. 2 ¶ II.a.

[28]Declaration of Brandon L. Mays, Exhibit A to Defendants' Motion to Compel, Docket Entry No. 11-1, p. 2.

v. Mitsubishi Motors Credit of America Inc., 156 F. App'x 710, 712 (5th Cir. 2005).  The court holds the same in this case.

Plaintiff does not challenge the sufficiency of the declaration or the authenticity of the Note.  Plaintiff offers no evidence to create a genuine issue of material fact about whether an arbitration agreement exists.  Plaintiff "cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests[,]" but "must identify specific evidence in the record demonstrating a material factual dispute for trial."  See Johnson, 2020 WL 8461518, at *4.  Because Plaintiff has not done so, the court concludes that a valid arbitration agreement exists.

## B.   Scope of the Arbitration Agreement

Whether Plaintiff's claims are within the scope of the arbitration agreement is a question for the arbitrator, not the court, to decide:  "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter."  First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1923 (1995) (internal citations omitted).  "We will not assume that the parties agreed to arbitrate arbitrability '[u]nless the parties clearly and unmistakably provide otherwise.'" Petrofac, Inc. v. DynMcDermott Petroleum Operations Co., 687 F.3d 671, 675 (5th Cir. 2012) (quoting AT & T Technologies, Inc. v. Communications Workers of America, 106 S. Ct. 1415, 1418 (1986)).

-11-

Express adoption of the AAA Rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. <u>Petrofac,</u> 687 F.3d at 675.

Plaintiff and Atlas expressly incorporated the AAA Commercial Rules into their arbitration agreement.[29]  These rules state at R-7(a) that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[30]

The court concludes that there is a valid arbitration agreement and that an arbitrator may determine whether Plaintiff's FDCPA and TDCA claims are within the agreement's scope.

## C.   Arbitrability of a Putative Class Action

Plaintiff argues that Atlas is unable to compel arbitration because her case is a putative class action.[31]  Defendants argue that the Note's silence on class arbitration means that the court must compel arbitration of Plaintiff's individual claims.[32]

"[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for

---

[29]Note, Exhibit A-1 to Defendants' Motion to Compel, Docket Entry No. 11-1, p. 5.

[30]American Arbitration Association Commercial Arbitration Rules and Mediation Procedures, R-7(a) (Jurisdiction), <u>available at</u> https://www.adr.org/sites/default/files/Commercial-Rules-Web.pdf.

[31]Plaintiff's Response, Docket Entry No. 14, pp. 2-3 ¶ II.b.

[32]Defendants' Reply, Docket Entry No. 15, pp. 2-4 ¶ B.

-12-

concluding that the party <u>agreed</u> to do so." <u>Stolt-Nielsen S.A. v.</u> <u>AnimalFeeds International Corp.</u>, 130 S. Ct. 1758, 1775 (2010) (emphasis in original). "The shift from individual to class arbitration is a 'fundamental' change that 'sacrifices the principal advantage of arbitration' and 'greatly increases risks to defendants.'" <u>Lamps Plus, Inc. v. Varela</u>, 139 S. Ct. 1407, 1409 (2019) (internal citations omitted).

> In individual arbitration, "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." Class arbitration lacks those benefits. It "sacrifices the principal advantage of arbitration - its informality - and makes the process slower, more costly, and more likely to generate procedural morass than final judgment."

<u>Id.</u> at 1416 (internal citations omitted).

Accordingly, "the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." <u>Stolt-Nielsen</u>, 130 S. Ct. at 1776. "[C]lass arbitration is a 'gateway' issue that must be decided by courts, not arbitrators — absent clear and unmistakable language in the arbitration clause to the contrary." <u>20/20 Communications, Inc. v.</u> <u>Crawford</u>, 930 F.3d 715, 717 (5th Cir. 2019).

Because the Note is silent as to whether class claims should be arbitrated, classwide arbitration in this case is not

-13-

appropriate. But Defendants are not seeking to compel arbitration on a classwide basis — they are seeking to compel Plaintiff to arbitrate her individual claims.[33] Plaintiff indicated by clear and unmistakable language that any claims arising from her agreement with Atlas would be decided by arbitration. Because none of the policy concerns that underlay the Court's decision in Varela are present, compelling Plaintiff to arbitrate her individual claims will not deny her the benefits of arbitration. See Varela, 139 S. Ct. at 1416.

## D. Waiver

Plaintiff argues that Atlas waived its right to compel arbitration by suing Plaintiff in state court.[34] Defendants reply that this argument lacks merit.[35]

"Waiver of arbitration is not a favored finding, and there is a presumption against it." Miller Brewing Co. v. Fort Worth Distributing Co., 781 F.2d 494, 496 (5th Cir. 1986). Therefore "the party claiming that the right to arbitrate has been waived bears a heavy burden." Republic Insurance Co. v. PAICO Receivables, LLC, 383 F.3d 341, 344 (5th Cir. 2004). A court may find waiver "when the party seeking arbitration substantially

---

[33]See Defendants' Motion to Compel, Docket Entry No. 11, p. 1 ("Defendants . . . move to compel Plaintiff . . . to arbitrate her individual claims against Defendants in the Class Action Complaint . . . .").

[34]Plaintiff's Response, Docket Entry No. 14, pp. 3-5 ¶ II.c.

[35]Defendants' Reply, Docket Entry No. 15, p. 4 ¶ C.

-14-

invokes the judicial process to the detriment or prejudice of the other party." Miller Brewing Co., 781 F.2d at 497.

Defendants acknowledge that five months before Plaintiff filed this action, Atlas filed a small claims action against Plaintiff in Texas state court seeking to enforce the loan agreement.[36]

Plaintiff cites Vine v. PLS Financial Services, Inc., 689 F. App'x 800 (5th Cir. 2017) as analogous to the present case.[37] The defendant in that case pushed for criminal charges against consumer debtors by submitting false worthless-check affidavits to local district attorneys' offices around Texas. Id. at 801. The consumers filed a class action for malicious prosecution, deceptive trade practices, fraud, and the use of threats or coercion to collect a debt. Id. at 802. The defendant sought to compel arbitration on the consumers' class action. Id. The Fifth Circuit held that the defendant had waived its right to arbitrate because it had "'invoked the judicial process to the extent it litigated a specific claim it subsequently sought to arbitrate.'" Id. at 806 (quoting Subway Equipment Leasing Corp. v. Forte, 169 F.3d 324, 328 (5th Cir. 1999)). The Fifth Circuit's holding rested on the fact that the defendant had litigated the very same claim he now sought to arbitrate, and that he had "initiated a process that invite[d] Texas district attorneys' offices to address issues that are at stake in the instant action." Id. (emphasis added). This is not

---

[36]Id. at 5 ¶ C.

[37]Plaintiff's Response, Docket Entry No. 14, p. 4 ¶ II.c.

-15-

what Atlas has done. It has filed an action for breach of contract against Plaintiff in state court that is distinct from Plaintiff's claims under the FDCPA and TDCA. If Atlas prevailed on its breach claim, that would not preclude a victory for Plaintiff on her FDCPA and TDCA claims.

Moreover, Plaintiff has failed to present evidence that Atlas's state court action materially prejudiced her. Courts look to three factors to determine whether a plaintiff was prejudiced: "(1) whether discovery occurred relating to arbitrable claims; (2) the time and expense incurred in defending against a motion for summary judgment; and (3) a party's failure to timely assert its right to arbitrate." Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd., 575 F.3d 476, 480 (5th Cir. 2009).

Plaintiff does not state what efforts Atlas has made in the small-claims action; and the parties have not stated what, if any, discovery has occurred in state court. See Petroleum Pipe, 575 F.3d at 480. Even if the parties had proceeded through some minimal level of discovery, that would not be sufficient to establish waiver. See Pacheco v. PCM Construction Services, LLC, 602 F. App'x 945, 949 (5th Cir. 2015) (citing Tenneco Resins, Inc. v. Davy International, AG, 770 F.2d 416, 421 (5th Cir. 1985)) (holding that "when only a minimal amount of discovery has been conducted, which may also be useful for the purpose of arbitration, the court should not ordinarily infer waiver based upon prejudice ."); see also Maldonado v. FirstService Residential, Inc.,

-16-

Civil Action No. H-20-1484, 2021 WL 966064, at *6 (S.D. Tex. Mar. 15, 2021) (citation omitted) (finding no waiver, in part, because the parties had "not yet engaged in extensive discovery").

Plaintiff has not provided any evidence as to the "time and expense" she incurred defending herself from Atlas's state-court claims. See Petroleum Pipe, 575 F.3d at 480. Nor does the record show that Defendants failed to "timely assert their right to arbitrate." See id. Plaintiff filed her FDCPA and TDCA claims on January 25, 2021,[38] and Defendants moved to compel arbitration on March 12, 2021,[39] just a little over six weeks later. Although she alleges that Atlas has caused her to "suffer from delay, expense, and damage to her legal position[,]"[40] Plaintiff has not provided evidence on any of the three factors mentioned in Petroleum Pipe, 575 F.3d at 480. Plaintiff has not carried the "heavy burden" that she needs to carry to prevent arbitration. See Republic Insurance Co., 383 F.3d at 344.

Moreover, the Note makes clear that even if Atlas does not "enforce [its] rights every time, [it] can still enforce them later."[41] While such a provision does not prevent the court from finding waiver, see Republic Insurance Co., 383 F.3d at 348-49, it

[38]Complaint, Docket Entry No. 1.

[39]Defendants' Motion to Compel, Docket Entry No. 11.

[40]Plaintiff's Response, Docket Entry No. 14, pp. 4-5 ¶ II.c.

[41]Note, Exhibit A-1 to Defendants' Motion to Compel, Docket Entry No. 11-1, p. 5.

does suggest that Atlas's decision to deal with a claim in small claims court should not prevent it from later enforcing its right to arbitrate a completely separate claim.  The court finds that Defendants did not waive the right to arbitrate Plaintiff's claims.

## E.   Arbitration By a Nonparty

Plaintiff argues that even if the court would compel Plaintiff to arbitrate her claims against Atlas, B&G should not likewise be able to compel arbitration because B&G was not a party to the arbitration contract.[42]  Defendants argue that B&G may assert its right to compel arbitration because intertwined claims estoppel applies.[43]

"As a general rule, 'an arbitration clause cannot be invoked by a non-party to the arbitration contract.'" G.T. Leach Builders, LLC v. Sapphire V.P., LP, 458 S.W.3d 502, 524 (Tex. 2015) (quoting Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 532 (5th Cir. 2000)).  But arbitration agreements can apply to non-signatories "in rare circumstances." Bridas S.A.P.I.C. v. Government of Turkmenistan, 345 F.3d 347, 358 (5th Cir. 2003). "[A] nonsignatory may invoke arbitration so long as the applicable state law allows enforcement by a nonparty." 5556 Gasmer Management LLC v. Underwriters at Lloyd's, London, 463 F. Supp. 3d 785, 791 (S.D. Tex. 2020) (citing Arthur Andersen LLP v. Carlisle,

---

[42]Plaintiff's Response, Docket Entry No. 14, p. 5 ¶ II.d.

[43]Defendants' Motion to Compel, Docket Entry No. 11, p. 6 ¶ B.

129 S. Ct. 1896, 1902 (2009)).    "The usual grounds under state law that allow a nonsignatory to enforce an arbitration against a signatory include incorporation by reference, assumption, agency, veil-piercing or alter ego, third-party beneficiary, and estoppel." Id. (citations omitted).   "To compel arbitration with a nonsignatory under intertwined-claims estoppel, there must be, first, a sufficiently close relationship between the nonsignatory and a signatory, and second, claims that are 'intimately founded in and intertwined with the underlying contract obligations.'" Id. at 792 (quoting Jody James Farms, JV v. Altman Group, Inc., 547 S.W.3d 624, 639 (Tex. 2018)).   "Intertwined claims estoppel 'estop[s] signatory plaintiffs from avoiding arbitration with nonsignatories' when the relationship between the parties is such that it would be unfair not to compel arbitration."   iiiTec, Ltd. v. Weatherford Technology Holdings, LLC, Civil Action No. H-18-1191, 2019 WL 1430428, at *5 (S.D. Tex. Mar. 29, 2019) (emphasis in original) (quoting In re Merrill Lynch Trust Co. FSB, 235 S.W.3d 185, 193-94 (Tex. 2007)).

Several factors show that the Defendants have a "close relationship" such that splitting Plaintiff's claims against them would be unfair.  See Jody James Farms, 547 S.W.3d at 639; iiiTec, Ltd., 2019 WL 1430428, at *5.  Plaintiff's claims center on (1) the Collection Letter that B&G sent while acting in its capacity as a debt collector for Atlas and (2) Atlas's decision to sue Plaintiff six days after the date of the Collection Letter despite the

letter's alleged implication that Plaintiff would have thirty days to pay.[44]   These claims are based on the Collection Letter that B&G sent on behalf of Atlas.   Plaintiff could not make these claims if Atlas had not sued her and thus allegedly violated the implicit "thirty-day" promise that B&G made in the Collection Letter. Plaintiff's claims depend on actions taken by Atlas and B&G that essentially combined to form the FDCPA and TDCA violations that Plaintiff alleges.

Plaintiff argues that some of her claims involve the Collection Letter alone independent of the state court case.[45]   But Plaintiff does not address Defendants' argument that all her claims, even those focused only on the Collection Letter, involve actions that B&G took while acting for Atlas in what Plaintiff alleges was an agent-like capacity: Plaintiff alleges that Atlas was involved in the review and approval of the Collection Letter, that Atlas had a burden to monitor B&G's activities, and that Atlas "is vicariously liable for the unlawful collection activities carried out by B&G on its behalf."[46]   Plaintiff cannot persuasively argue on the one hand that B&G was acting as Atlas's agent while arguing on the other hand that the two are not sufficiently related to arbitrate their claims together.

---

[44]Docket Entry No. 1, pp. 3-4 ¶¶ 22-32.

[45]Plaintiff's Response, Docket Entry No. 14, p. 5 ¶ II.d.

[46]Complaint, Docket Entry No. 1, p. 10 ¶ 57.

-20-

Moreover, Plaintiff's claims against B&G are "intimately founded in and intertwined with the underlying contract obligations" in the Note. See Jody James Farms, 547 S.W.3d at 639. Each of the Defendants' alleged actions were taken pursuant to the terms of the Note and in response to Plaintiff's alleged breach of the Note. If "the facts alleged 'touch matters,' have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract containing the arbitration agreement, the claim meets the test and is thus arbitrable." Moore v. Maverick Natural Resources, LLC, Civil Action No. H-20-591, 2020 WL 6431905, at *3 (S.D. Tex. Oct. 15, 2020), report and recommendation adopted, Civil Action No. H-20-591, 2020 WL 6392854 (S.D. Tex. Nov. 2, 2020) (quoting Hays v. HCA Holdings, Inc., 838 F.3d 605, 610 (5th Cir. 2016)). See also Liedtke v. Frank, 437 F. Supp. 2d 696, 699 (N.D. Ohio 2006) ("It is clear from plaintiff's Complaint that the claims against Frank and the Javitch firm are integrally related to the contract containing the arbitration clause."); Cunningham v. Van Ru Credit Corp., No. 06-10452, 2006 WL 3289775, at *3-4 (E.D. Mich. Nov. 12, 2006) (compelling arbitration because Plaintiff alleged "interdependent misconduct by Defendant and Capital One" and "challeng[ed] the legality of an arrangement between Capital One and Defendant" such that "the outcome of the case [would] have a significant impact on Capital One's operations, and Capital One's involvement in the case [would] be required.").

The court finds that all the facts alleged against B&G are inextricably enmeshed and have a significant relationship to the terms of the Note, and thus B&G may compel arbitration despite being a nonsignatory.

**F.    Dismissing the Case**

For the reasons explained above, the court concludes that Defendants may enforce the arbitration agreement and compel arbitration of Plaintiff's claims. Defendants have asked the court to stay this case pending a final arbitration.[47]

When all issues raised in an action are bound by an agreement to arbitrate, the court has discretion to dismiss the action. <u>Alford v. Dean Witter Reynolds, Inc.</u>, 975 F.2d 1161, 1164 (5th Cir. 1992). Because Plaintiff's claims must be submitted to arbitration, "retaining jurisdiction and staying the action will serve no purpose." <u>See id.</u> Accordingly, the court will dismiss the action without prejudice.

**IV.   <u>Conclusion and Order</u>**

For the reasons explained above, Defendants' Joint Motion to Compel Arbitration (Docket Entry No. 11) is **GRANTED**, and this action will be dismissed without prejudice.

**SIGNED** at Houston, Texas, on this the 19th day of May, 2021.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

_____

[47]Defendants' Motion to Compel, Docket Entry No. 11, p. 8.

-22-